MOORE, Circuit Judge,
with whom RADER, Chief Judge, joins,
dissenting from the denial of the petition for rehearing en banc.
Claim construction is the single most important event in the course of a patent litigation. It defines the scope of the property right being enforced, and is often the difference between infringement and non-infringement, or validity and invalidity. Despite the crucial role that claim construction plays in patent litigation, our rules are still ill-defined and inconsistently applied, even by us. Commentators have observed that claim construction appeals are “panel dependent” which leads to frustrating and unpredictable results for both the litigants and the trial court. See, e.g., Fed. Cir. Split for 2nd Time In 2011 On Use of Patent Specification In Claim Construction, BNA Patent, Trademark & Copyright Law Daily (noting the “disagreement within the Federal Circuit on the extent to which judges may look to the patent specification to interpret claims continues”); Court Continues to Struggle with Claim Construction, Patently-0 (2011), http://www.patentlyo.com/patent/ 2011/07/court-continues-to-struggle-with-claim-construction.html (noting the “panel dependence” in claim construction); see also Wegner, H.C., Arlington Indus. v. Bridgeport Fittings: The 20 Year Claim Construction Debate, IP Frontline, http:// www.ipfrontline.com/depts/printable template.aspx?id=24829 (“Until there is a final resolution of this debate there will never be clarity in claim construction at the Federal Circuit.”). Nowhere is the conflict more apparent then in our jurisprudence on the use of the specification in the interpretation of claim language. The familiar mantra is “there is a fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims.” Retractable Techs., Inc. v. Becton, Dickinson & Co., 653 F.3d 1296, 1305 (Fed.Cir.2011). This case is a good vehicle to address two important claim construction principles: the role of the specification in construing the claims and whether deference should be given to the district court in the claim construction process. Accordingly, I dissent from the denial of rehearing en banc.
I.
It is clear that the words of the claim define the scope of the patented invention. See, e.g., Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc) (“It is a ‘bedrock principle’ of patent law that ‘the claims of a patent define the invention to *1371 which the patentee is entitled the right to exclude.’ ”); Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1374 (Fed.Cir.2008) (“The words of the claims define the scope of the patented invention.”). If the metes and bounds of what the inventor claims extend beyond what he has invented or disclosed in the specification, that is a problem of validity, not claim construction. It is not for the court to tailor the claim language to the invention disclosed. The language is the language, and the same rules that apply to the construction of other legal instruments should apply to the construction of a patent claim.
Applying these bedrock principles of interpretation, claim terms are to be given their plain and ordinary meaning to one of skill in the art. Quite frankly, I thought we resolved this in Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005) (en banc). Of course the claims are to be construed in the context of the entire patent, including the specification. The specification may shed light on the plain and ordinary meaning. However, the specification cannot be used to narrow a claim term — to deviate from the plain and ordinary meaning— unless the inventor acted as his own lexicographer or intentionally disclaimed or disavowed claim scope. Id. at 1316; see also Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed.Cir.2002) (“[C]laim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate ... [via] expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.”); CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed.Cir.2002) (“[T]he claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term....”). The circumstances in which the written description causes one of skill in the art to reject the plain meaning of a term are quite narrow. If the inventor has chosen a broad claim term that is not supported by his specification, the patent’s validity may be in jeopardy. But we cannot, as the court does in Retractable, redefine a claim term to match our view of the scope of the invention as disclosed in the specification. We are not the lexicographers.
Retractable simply cannot be reconciled with our en banc decision in Phillips. In Phillips after generalizing about these very concepts — the primacy of the claims and the role of the specification — this court applied those principles to the term “baffles.” The en banc court held that “baffles” could be placed at any angle including at right angles. Phillips, 415 F.3d at 1324-27. The court explained that there is nothing in the plain and ordinary meaning of baffles which prevents them from being at right angles. Id. The court then pointed to the fact that dependent claims limit the placement of the baffles to angles that will deflect projectiles. Id. The court reasoned that since the dependent claims restricted the angles at which the baffles should be placed, the independent claim, without that limitation, did not. Id. The dissent in the en banc Phillips case believed that the term baffles, should be limited to “angled baffles” because “the specification contained no disclosure of baffles at right angles” and “only angled baffles” can deflect bullets (the primary objective of the baffles). Id. at 1329. The dissent explained that every figure, embodiment, and disclosure of baffles is of angled baffles (not 90 degrees). Id. at 1329-30.
The dissent made a compelling case— the specification is replete with angled baffles — and angling is necessary to achieve the stated objective of deflection. Nonetheless, the majority of the en banc court held that baffles do not have to be angled. *1372 There was no disclaimer or special lexicography. Baffles were to be given their plain and ordinary meaning to one of skill in the art and the limitation in the specification “angled baffles” would not be imported into the claim. With all due respect to the majority in Retractable, the case is inconsistent with Phillips, and we are bound to follow our en banc decision.
In Retractable, the claim term at issue, “body,” has a plain meaning that includes both single and multi-piece syringe bodies. The parties do not dispute this. This plain meaning of “body” is underscored by the specification, which explains that the “outer body can be made in one piece.” U.S. Patent 7,351,224 ('224 patent) eol.5 1.42. Dependent claim 31 in the '224 patent narrows independent claim 25 (which refers only to a “body”) to a syringe “comprising a one-piece body.” If “body” does not include both single and multi-piece structures, the “one piece” modifier in the specification and dependent claim is superfluous. As our court explained in Phillips, “the claim in this case refers to ‘steel baffles,’ which strongly implies that the term ‘baffles’ does not inherently mean objects made of steel.” 415 F.3d at 1314. There is nothing in the remainder of the patent which requires deviation from the plain meaning of “body.” The inventor did not act as his own lexicographer by defining “body” to mean only “a single piece body,” and did not provide a clear and unambiguous disclaimer of anything other than a one-piece body. And the majority in Retractable does not conclude there was any disclaimer or special lexicography.
The error in Retractable is the majority’s attempt to rewrite the claims to better conform to what it discerns is the “invention” of the patent instead of construing the language of the claim. Indeed, the majority candidly explained that its construction, limiting “body” to a one-piece body, “is required to tether the claims to what the specifications indicate the inventor actually invented.” Retractable, 653 F.3d at 1305. The majority reaches this conclusion based on the examples disclosed in the specification that have a “one piece” body, an indication in the specification that the invention “features a one piece” body, and the disclosure that the syringe “can be molded as one piece.” Id. Yet none of these statements in the specification suggest that “body” actually means “one-piece body”; to the contrary, the use of the modifier “one piece” strongly implies that the term “body” does not inherently mean objects made solely of one piece. Phillips, 415 F.3d at 1314. Regardless of what “the inventor actually invented,” it is clear that the only construction of the term “body” that comports with the patent as a whole, as well as the plain meaning of the term, includes both single and multi-piece bodies.
Changing the plain meaning of a claim term to tailor its scope to what the panel believes was the “actual invention” is not supported by Phillips. The majority uses the specification to discern “the scope of the actual invention,” Retractable, 653 F.3d at 1305, and then limits the claim terms accordingly. The concurrence is even clearer on what it views as the proper approach, explaining that “the claims cannot go beyond the actual invention,” and suggesting an “obligation to make full disclosure of what is actually invented, and to claim that and nothing more.” Id. at 1311. While this principle is certainly correct— § 112 requires that the inventor disclose and enable that which he claimed — we do not rewrite claims. This is not a case where the majority is choosing between two equally plausible plain meanings and adopting the one that comports with the disclosure in the specification. The plain meaning of body is not “one piece body.” Absent clear lexicography or disclaimer in *1373 the specification, we cannot import that limitation into the claims. We simply cannot rewrite the claims, not even to save their validity.[1]
If Retractable were an isolated case, en banc review might not be warranted, but it is not. Compare, e.g., Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 632 F.3d 1246 (Fed.Cir.2011) and Laryngeal Mask Co. Ltd. v. Ambio, 618 F.3d 1367 (Fed.Cir. 2010) (declining to limit claims to what is thought to be the invention contemplated by the inventors) with Retractable and Fifth Generation Computer Corp. v. Int’l Bus. Mach. Corp., 416 Fed.Appx. 74 (Fed. Cir.2011) (limiting claims to what is determined to be the actual invention). Retractable illustrates a fundamental split within the court as to the meaning of Phillips and Markman as well as the proper approach to claim interpretation. I would grant en banc review of Retractable to resolve the clear intra-circuit split on the claim construction process.
II.
I would also grant en banc review in Retractable to consider whether deference should be given to the district court’s claim construction. We have waited five years (since Amgen Inc. v. Hoechst Marion Roussel, Inc., 469 F.3d 1039 (Fed.Cir. 2006), where six judges claimed a willingness to review Cybor) for that ever-elusive perfect vehicle to review the issue of deference to the district court’s claim construction. The Supreme Court held that claim construction was a “mongrel practice.” Markman v. Westview Instruments, Inc., 517 U.S. 370, 378, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). As such it is clearly a mixed question of law and fact and deference should be given to the factual parts.
The majority’s approach to claim construction in this case is virtually identical to the analysis performed under § 112’s written description requirement, which is an entirely factual analysis. If the majority in Retractable is correct that as part of claim construction, we must determine the nature of the invention described in the specification and ensure that the scope of the claims are limited only to the actual invention disclosed, we must acknowledge the factual underpinnings of this analysis and there should be deference. The majority here gave no deference, rejected the district court’s construction and overturned a jury verdict of infringement. It is time to rethink the deference we give to district court claim constructions and the fallacy that the entire process is one of law. I dissent from the denial of en banc review in this case.

. I am not suggesting, nor has the majority held, that if body is not limited to a one-piece body, the claims would fail under § 112.