# United States Court of Appeals for the Federal Circuit

---

**RETRACTABLE TECHNOLOGIES, INC. AND THOMAS J. SHAW,**

*Plaintiffs-Appellees,*

**v.**

**BECTON, DICKINSON AND COMPANY,**

*Defendant-Appellant.*

---

2010-1402

---

Appeal from the United States District Court for the Eastern District of Texas in case no. 07-CV-0250, Judge David J. Folsom.

---

ON PETITION FOR REHEARING EN BANC

---

ROY W. HARDIN, Locke, Lord, Bissell & Liddell, LLP, of Dallas, Texas, argued for plaintiffs-appellees. With him on the brief were CYNTHIA KEELY TIMMS and MARK R. BACKOFEN.

WILLIAM F. LEE, Wilmer, Cutler, Pickering, Hale, and Dorr, LLP, of Boston, Massachusetts, argued for defendant-appellant. With him on the brief were LISA J. PIROZZOLO; and WILLIAM G. MCELWAIN and HEATH A. BROOKS, of Washington, DC.

---

Before RADER, *Chief Judge*, NEWMAN, PLAGER[*], LOURIE, BRYSON, LINN, DYK, PROST, MOORE, O'MALLEY, and REYNA, *Circuit Judges*.

PER CURIAM.

MOORE, *Circuit Judge*, with whom RADER, *Chief Judge*, joins, dissents from the denial of the petition for rehearing en banc.

O'MALLEY, *Circuit Judge*, dissents from the denial of the petition for rehearing en banc.

## O R D E R

A petition for rehearing en banc was filed by Plaintiffs-Appellees, and a response thereto was invited by the court and filed by Defendant-Appellant. The petition for rehearing was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc and the response were referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition of Plaintiffs-Appellees for panel rehearing is denied.

(2) The petition of Plaintiffs-Appellees for rehearing en banc is denied.

(3) The mandate of the court will issue on November 7, 2011.

---

[*] Judge Plager participated in the decision for panel rehearing.

FOR THE COURT

| October 31, 2011 | /s/ Jan Horbaly |
|---|---|
| Date | Jan Horbaly<br>Clerk |

# United States Court of Appeals for the Federal Circuit

---

**RETRACTABLE TECHNOLOGIES, INC. AND THOMAS J. SHAW,**

*Plaintiffs-Appellees,*

**v.**

**BECTON, DICKINSON AND COMPANY,**

*Defendant-Appellant.*

---

2010-1402

---

Appeal from the United States District Court for the Eastern District of Texas in case no. 07-CV-0250, Judge David J. Folsom.

---

MOORE, *Circuit Judge*, with whom RADER, *Chief Judge*, joins, dissenting from the denial of the petition for rehearing en banc.

---

Claim construction is the single most important event in the course of a patent litigation. It defines the scope of the property right being enforced, and is often the difference between infringement and non-infringement, or validity and invalidity. Despite the crucial role that claim construction plays in patent litigation, our rules are still ill-defined and inconsistently applied, even by us. Commentators have observed that claim construction appeals

are "panel dependent" which leads to frustrating and unpredictable results for both the litigants and the trial court. *See, e.g.*, *Fed. Cir. Split for 2nd Time In 2011 On Use of Patent Specification In Claim Construction*, BNA Patent, Trademark & Copyright Law Daily (noting the "disagreement within the Federal Circuit on the extent to which judges may look to the patent specification to interpret claims continues"); *Court Continues to Struggle with Claim Construction*, Patently-O (2011), http://www.patentlyo.com/patent/2011/07/court-continues-to-struggle-with-claim-construction.html (noting the "panel dependence" in claim construction); *see also* Wegner, H.C., *Arlington Indus. v. Bridgeport Fittings: The 20 Year Claim Construction Debate*, IP Frontline, http://www.ipfrontline.com/depts/printabletemplate.aspx?id=24829 ("Until there is a final resolution of this debate there will never be clarity in claim construction at the Federal Circuit."). Nowhere is the conflict more apparent then in our jurisprudence on the use of the specification in the interpretation of claim language. The familiar mantra is "there is a fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). This case is a good vehicle to address two important claim construction principles: the role of the specification in construing the claims and whether deference should be given to the district court in the claim construction process. Accordingly, I dissent from the denial of rehearing en banc.

## I.

It is clear that the words of the claim define the scope of the patented invention. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) ("It is a 'bedrock principle' of patent law that 'the claims of a

patent define the invention to which the patentee is entitled the right to exclude.'"); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) ("The words of the claims define the scope of the patented invention."). If the metes and bounds of what the inventor claims extend beyond what he has invented or disclosed in the specification, that is a problem of validity, not claim construction. It is not for the court to tailor the claim language to the invention disclosed. The language is the language, and the same rules that apply to the construction of other legal instruments should apply to the construction of a patent claim.

Applying these bedrock principles of interpretation, claim terms are to be given their plain and ordinary meaning to one of skill in the art. Quite frankly, I thought we resolved this in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). Of course the claims are to be construed in the context of the entire patent, including the specification. The specification may shed light on the plain and ordinary meaning. However, the specification cannot be used to narrow a claim term – to deviate from the plain and ordinary meaning – unless the inventor acted as his own lexicographer or intentionally disclaimed or disavowed claim scope. *Id.* at 1316; *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002) ("[C]laim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate . . . [via] expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[T]he claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term . . . ."). The circumstances in which the written description causes one

of skill in the art to reject the plain meaning of a term are quite narrow.  If the inventor has chosen a broad claim term that is not supported by his specification, the patent's validity may be in jeopardy.  But we cannot, as the court does in *Retractable*, redefine a claim term to match our view of the scope of the invention as disclosed in the specification.  We are not the lexicographers.

*Retractable* simply cannot be reconciled with our en banc decision in *Phillips*.  In *Phillips* after generalizing about these very concepts – the primacy of the claims and the role of the specification – this court applied those principles to the term "baffles."  The en banc court held that "baffles" could be placed at any angle including at right angles.  *Phillips*, 415 F.3d at 1324-27.  The court explained that there is nothing in the plain and ordinary meaning of baffles which prevents them from being at right angles.  *Id.*  The court then pointed to the fact that dependent claims limit the placement of the baffles to angles that will deflect projectiles.  *Id.*  The court reasoned that since the dependent claims restricted the angles at which the baffles should be placed, the independent claim, without that limitation, did not.  *Id.*  The dissent in the en banc *Phillips* case believed that the term baffles, should be limited to "angled baffles" because "the specification contained no disclosure of baffles at right angles" and "only angled baffles" can deflect bullets (the primary objective of the baffles).  *Id.* at 1329.  The dissent explained that every figure, embodiment, and disclosure of baffles is of angled baffles (not 90 degrees).  *Id.* at 1329-30.

The dissent made a compelling case – the specification is replete with angled baffles – and angling is necessary to achieve the stated objective of deflection.  Nonetheless, the majority of the en banc court held that baffles do *not* have to be angled.  There was no disclaimer or special

lexicography. Baffles were to be given their plain and ordinary meaning to one of skill in the art and the limitation in the specification "angled baffles" would not be imported into the claim. With all due respect to the majority in *Retractable*, the case is inconsistent with *Phillips*, and we are bound to follow our en banc decision.

In *Retractable*, the claim term at issue, "body," has a plain meaning that includes both single and multi-piece syringe bodies. The parties do not dispute this. This plain meaning of "body" is underscored by the specification, which explains that the "outer body can be made in one piece." U.S. Patent 7,351,224 ('224 patent) col.5 l.42. Dependent claim 31 in the '224 patent narrows independent claim 25 (which refers only to a "body") to a syringe "comprising a one-piece body." If "body" does not include both single and multi-piece structures, the "one piece" modifier in the specification and dependent claim is superfluous. As our court explained in *Phillips*, "the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel." 415 F.3d at 1314. There is nothing in the remainder of the patent which requires deviation from the plain meaning of "body." The inventor did not act as his own lexicographer by defining "body" to mean only "a single piece body," and did not provide a clear and unambiguous disclaimer of anything other than a one-piece body. And the majority in *Retractable* does *not* conclude there was any disclaimer or special lexicography.

The error in *Retractable* is the majority's attempt to rewrite the claims to better conform to what it discerns is the "invention" of the patent instead of construing the language of the claim. Indeed, the majority candidly explained that its construction, limiting "body" to a one-piece body, "is required to tether the claims to what the specifications indicate the inventor *actually invented*."

*Retractable*, 653 F.3d at 1305.  The majority reaches this conclusion based on the examples disclosed in the specification that have a "one piece" body, an indication in the specification that the invention "features a one piece" body, and the disclosure that the syringe "can be molded as one piece."  *Id.*  Yet none of these statements in the specification suggest that "body" actually means "one-piece body"; to the contrary, the use of the modifier "one piece" strongly implies that the term "body" does not inherently mean objects made solely of one piece.  *Phillips*, 415 F.3d at 1314.  Regardless of what "the inventor actually invented," it is clear that the *only* construction of the term "body" that comports with the patent as a whole, as well as the plain meaning of the term, includes both single and multi-piece bodies.

Changing the plain meaning of a claim term to tailor its scope to what the panel believes was the "actual invention" is not supported by *Phillips*.  The majority uses the specification to discern "the scope of the actual invention," *Retractable*, 653 F.3d at 1305, and then limits the claim terms accordingly.  The concurrence is even clearer on what it views as the proper approach, explaining that "the claims cannot go beyond the actual invention," and suggesting an "obligation to make full disclosure of what is actually invented, and to claim that and nothing more."  *Id.* at 1311.  While this principle is certainly correct – § 112 requires that the inventor disclose and enable that which he claimed – we do not rewrite claims.  This is not a case where the majority is choosing between two equally plausible plain meanings and adopting the one that comports with the disclosure in the specification.  The plain meaning of body is *not* "one piece body."  Absent clear lexicography or disclaimer in the specification, we

cannot import that limitation into the claims. We simply cannot rewrite the claims, not even to save their validity.[1]

If *Retractable* were an isolated case, en banc review might not be warranted, but it is not. *Compare, e.g.*, *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246 (Fed. Cir. 2011) *and Laryngeal Mask Co. Ltd. v. Ambu*, 618 F.3d 1367 (Fed. Cir. 2010) (declining to limit claims to what is thought to be the invention contemplated by the inventors) *with Retractable and Fifth Generation Computer Corp. v. Int'l Bus. Mach. Corp.*, 416 F. App'x 74 (Fed. Cir. 2011) (limiting claims to what is determined to be the actual invention). *Retractable* illustrates a fundamental split within the court as to the meaning of *Phillips* and *Markman* as well as the proper approach to claim interpretation. I would grant en banc review of *Retractable* to resolve the clear intra-circuit split on the claim construction process.

## II.

I would also grant en banc review in *Retractable* to consider whether deference should be given to the district court's claim construction. We have waited five years (since *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 469 F.3d 1039 (Fed. Cir. 2006), where six judges claimed a willingness to review *Cybor*) for that ever-elusive perfect vehicle to review the issue of deference to the district court's claim construction. The Supreme Court held that claim construction was a "mongrel practice." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 378 (1996). As such it is clearly a mixed question of law and fact and deference should be given to the factual parts.

---

[1]    I am not suggesting, nor has the majority held, that if body is not limited to a one-piece body, the claims would fail under § 112.

The majority's approach to claim construction in this case is virtually identical to the analysis performed under § 112's written description requirement, which is an entirely factual analysis. If the majority in *Retractable* is correct that as part of claim construction, we must determine the nature of the invention described in the specification and ensure that the scope of the claims are limited only to the actual invention disclosed, we must acknowledge the factual underpinnings of this analysis and there should be deference. The majority here gave no deference, rejected the district court's construction and overturned a jury verdict of infringement. It is time to rethink the deference we give to district court claim constructions and the fallacy that the entire process is one of law. I dissent from the denial of en banc review in this case.

# United States Court of Appeals
# for the Federal Circuit

---

**RETRACTABLE TECHNOLOGIES, INC. AND THOMAS J. SHAW,**
*Plaintiffs-Appellees,*

**v.**

**BECTON, DICKSINON AND COMPANY,**
*Defendant-Appellant.*

---

2010-1402

---

Appeal from the United States District Court for the Eastern District of Texas in Case No. 07-CV-0250, Chief Judge David J. Folsom.

---

O'MALLEY, *Circuit Judge*, dissenting from the denial of the petition for rehearing en banc.

---

It is time to revisit and reverse our decision in *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc). Because this case presents an appropriate vehicle to do so, and the court's decision necessarily would change if even minimal deference were afforded to the trial judge's claim construction, I dissent from the refusal to hear this case en banc.

In *Cybor*, we held that claim construction is a matter of law reviewed without deference to a district court's

conclusions. *Id.* at 1455-56. We decided *Cybor* in the wake of the Supreme Court's decision to place claim construction in the hands of judges rather than juries. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("*Markman II*"). The Supreme Court, however, did not assign the task of claim construction to trial judges because it believed the meaning of patent claims is a pure question of law. Rather, the Supreme Court classified the exercise of claim construction as a "mongrel" practice, involving both legal and factual inquiries. *Id.* at 378. The Court simply concluded that, because the Seventh Amendment to the U.S. Constitution did not demand that the issue be decided by a jury and judges were better equipped to address it, claim construction should be placed in the hands of trial judges. *Id.* at 388-89. Importantly, the Supreme Court did not affirm this court's earlier conclusion that resort to a jury was unnecessary because claim construction is a pure question of law. *Compare id.* at 378, *with Markman v. Westview Instruments Inc.*, 52 F.3d 967, 977-79 (Fed. Cir. 1995) (en banc) ("*Markman I*"). The Supreme Court instead engaged in a detailed historical analysis to determine whether the Seventh Amendment compelled resort to a jury on the unique question of claim construction—an analysis which would have been wholly unnecessary if the Supreme Court agreed with our description of claim construction as a purely legal one. *Markman II*, 517 U.S. at 378-84.

Despite this seemingly clear guidance from the Supreme Court, we reiterated in *Cybor* that our court will treat all claim construction determinations as pure questions of law, reviewable with zero deference. 138 F.3d at 1455-56. That decision was ill considered thirteen years ago and has not proven "beneficial" to patent jurisprudence "in the long run." *See id.* at 1463 (Plager, J., con-

curring) ("Whether this approach to patent litigation will in the long run prove beneficial remains to be seen.").

Post-*Markman*, district judges have been trained to—and do—engage in detailed and thoughtful analysis of the claim construction issues presented to them. They conduct live hearings with argument and testimony, sometimes covering several days, and certainly always extending beyond the mere minutes that courts of appeals have to devote to live exchanges with counsel. Simply, "the trial court has tools to acquire and evaluate evidence that this court lacks." *Cybor*, 138 F.3d at 1477 (Rader, J., dissenting). While no one would urge deference to cryptic, unthinking rulings born of little or no real inquiry, where, as here, the trial court has thoroughly vetted all relevant aspects of the claim constructions at issue, "careful consideration of the institutional advantages of the district court would counsel deference." *Id.* at 1478. Indeed, the Supreme Court has held that a deferential standard of review is warranted for mixed questions of law and fact "when it appears that the district court is 'better positioned' than the appellate court to decide the issue in question . . . ." *Salve Regina College v. Russell*, 499 U.S. 225, 233 (1991) (quoting *Miller v. Fenton*, 474 U.S. 104, 114 (1985)). *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995) ("The reviewing attitude that a court of appeals takes toward a district court decision should depend upon 'the respective institutional advantages of trial and appellate courts . . . .' " (quoting *Salve Regina College*, 499 U.S. at 233)).

The claim construction on which the resolution of this case turns was vetted by not just one trial judge, but two. The claim term at issue is a syringe's "body." Becton Dickinson argues that the term "body" should be limited to a one-piece body; Retractable Technologies argues that the construction should allow for a multiple-piece body.

Before reaching this court, the construction of that term had been debated by multiple lawyers and had been considered by two district judges. In a prior case involving some of the patents in suit here, Judge Leonard Davis of the Eastern District of Texas construed the term "body" to allow for multiple pieces. *Retractable Techs., Inc. v. New Medical Tech., Inc.*, No. 4:02-cv-34, Claim Constr. Order at 8-9 (ECF No. 110) (E.D. Tex. Mar. 8, 2004). Judge Davis had the benefit of a live claim construction hearing and extensive briefing from the parties before he construed the claim term. Judge David Folsom, also of the Eastern District of Texas, presided in this case. Judge Folsom again conducted a live claim construction hearing after briefing from the parties. Judge Folsom ultimately agreed with Judge Davis's construction of the term "body" in the prior case and applied it here. *Retractable Techs., Inc. v. Becton Dickinson & Co.*, No. 2:07-cv-250, Claim Constr. Order at 6 (ECF No. 122) (E.D. Tex. Jan. 20, 2009). The parties proceeded to trial on that claim construction. The jury found that both of Becton Dickinson's accused syringes infringed the asserted claims. When the panel reversed Judge Folsom's claim construction, it upended the jury verdict and set aside the product of years of litigation before two judicial officers. In other words, the decision here did not promote the consistency and uniformity in patent law that *Cybor* was intended to foster; the decision here accomplished the opposite.

Unlike Judge Moore, I do not criticize the panel majority for its legal analysis. The majority adhered to the broad principles of claim construction set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), and reached a different conclusion than the trial judge. Because *Cybor* prohibits deference to lower court determinations regarding claim construction, the majority had no

reason to question its right to reach an entirely independent decision on the construction of this critical claim term. Indeed, but for my belief that *Cybor* was wrongly decided, I would not urge en banc in this case even if I would have applied *Phillips* differently than the majority. The fact, however, that the panel members could not agree on the proper claim construction in this case, despite careful consideration of their respective obligations under *Phillips*, underscores the complicated and fact-intensive nature of claim construction and the need to rethink our approach to it.

In the majority opinion, Judge Lourie writes:

> There is a fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims. In reviewing the intrinsic record to construe the claims, we strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention.

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, No. 2010-1402, slip op. at 17 (Fed. Cir. Jul. 8, 2011) (citations omitted). An exercise that requires review of often extensive documentary evidence and, in some cases, expert evidence for purposes of "capturing the scope of the actual invention" sounds tellingly like a factual inquiry, not a legal one. The fact that this inquiry is to be undertaken from the point of view of one skilled in the art at the time of the invention, moreover, underscores this conclusion. Where, as here, there is fair debate about the scope of the

invention after application of *Phillips*'s principles, we should defer to reasoned district court choices. Reasonable minds can—and do—differ over the correct interpretation of the term "body" as used in the patent in suit. These are not the circumstances under which we should be reversing carefully reasoned claim constructions and putting aside years of litigation in the process.

Five active judges of this court have already expressed a desire to revisit *Cybor*. *See Amgen Inc. v. Hoechst Marion Rousell, Inc.*, 469 F.3d 1039 (Fed. Cir. 2006). I join in that desire. The author of the majority opinion in this case has said that "we ought to lean toward affirmance of a claim construction in the absence of a strong conviction of error." *Phillips*, 415 F.3d at 1330 (Fed. Cir. 2005) (Lourie, J., dissenting). I agree.

It is time we stop talking about whether we should reconsider the standard of review we employ when reviewing claim construction decisions from district courts; it is time we do so.